UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA E. DEMPSTER,<br><br>               Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>               Defendant. | CIVIL ACTION<br>NO.04-10334-PBS |

### MEMORANDUM IN SUPPORT
### OF MOTION TO DISMISS OR
### IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

This proceeding arises out of plaintiff's claim for damage to a mailpiece. Plaintiff has failed to effect proper service upon the defendant pursuant to Fed. R. Civ. P. 4(i) and therefore, the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(5). In addition, the doctrine of sovereign immunity operates to bar her claim to the extent it sounds in tort and therefore, the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(h)(3).

### APPLICABLE POSTAL REGULATIONS

The United States Postal Service was established by the Postal Reorganization Act of 1970, Pub. L. 91-375, 84 Stat. 719 (August 12, 1970) (codified as Title 39, United States Code), as an independent establishment of the United States Government responsible for providing postal service throughout the country. 39 U.S.C. §§ 101(a), 201. Congress empowered the Postal Service to "plan, develop, promote, and provide adequate and efficient postal services," and to "provide such other services incidental thereto as it finds appropriate to its functions and in the public interest." 39 U.S.C. § 403(a). Pursuant to these provisions, the Postal Service is authorized to provide domestic registered and insured services to the general public. The Postal Service's provision of insured mail service is defined by Classification Schedule SS-9, Domestic

Mail Classification Schedule (DMCS), 39 C.F.R. Part 3001, Subpt. C, App. A,[1] and regulations published in the Domestic Mail Manual (DMM),[2] which generally contains the regulations of the Postal Service governing domestic mail services.[3] Under DMM provisions, postal customers may elect to insure mail for protection against loss, damage, or rifling. DMM § S913.1.1.[4] Insured mail is dispatched and handled in transit as ordinary first-, third-, or fourth-class mail, depending upon the service chosen by the mailer. See DMM § S913.1.1.

Mailers may elect to purchase insurance coverage up to $5,000.00 at the time of mailing. See DMM §§ S913.1.1, R900.12.0. In order to secure postal insurance, the customer must prepay insurance fees in addition to the postage. For insured amounts exceeding fifty dollars, PS

---

[1] Classification Schedule SS-9 is part of the Domestic Mail Classification Schedule (DMCS). Congress mandated the creation of the DMCS in 39 U.S.C. § 3623(a), as well as procedures for its promulgation. 39 U.S.C. §§ 3621-3625. The DMCS sets forth the Postal Service's product line offered to the public; it exists to categorize products and services so that those products and services that are likely to bear different rates are clearly distinguished from one another. The Postal Service is empowered to promulgate regulations to implement the DMCS, 39 U.S.C. § 401(2), National Retired Teachers Ass'n v. United States Postal Service, 593 F.2d 1360, 1363 (D.C. Cir. 1979), and has done so in the Domestic Mail Manual.

[2] The DMM is incorporated by reference in the Code of Federal Regulations at 39 C.F.R. § 111.1 and form part of the regulations of the Postal Service. 39 C.F.R. § 211.2(a)(2). The DMM is publicly available at http://pe.usps.gov/; and, among other locations, all United States Post Offices, and a copy of the DMM is on file with the Director of the Federal Register, 39 C.F.R. § 111.2.

[3] Copies of the DMM regulations with regard to indemnity claims cited herein are attached hereto as Exhibit A.

[4] Mailers are responsible for ensuring compliance with all mailing requirements. Section G0120.2.1 of the DMM provides in clear and unequivocal terms that:

> [m]ailers must comply with all applicable postal standards. Despite any statement in this document or by any USPS employee, the burden rests with the mailer to comply with the laws and standards governing domestic mail.

Form 3813-P, <u>Receipt for Insured Mail</u>, is issued to the sender for insured mail when it is accepted. <u>See</u> DMM § S913.2.7. Insurance coverage is limited to the actual value of the article mailed, but may not exceed the amount of insurance coverage purchased. <u>See</u> DMM §§ S010.2.11a, S010.2.13.

In order to secure reimbursement for loss under the insurance coverage provided, a customer must file a claim for indemnity by completing a PS Form 1000, <u>Domestic Claim or Registered Inquiry</u>, and presenting evidence of insurance, <u>evidence of value</u>, and proof of damage or loss. <u>See</u> DMM § S010.2.4, S010.2.5, S010.2.6, S010.2.8, 5010.2.9 (for proof of loss) (emphasis added). To substantiate a claim for damage, the article, packaging, and mailing container must be presented to the Postal Service for inspection. <u>See</u> DMM § S010.2.8.

Postal regulations clearly provide that coverage is not available for damage caused by shock or transportation environment in the absence of evidence of damage to the mailing container. <u>See</u> DMM § S010.2.14p. Additionally, if the contents are sufficiently fragile so as to prevent their safe carriage in the mail, no reimbursement is available, regardless of how well the article is packaged. <u>See</u> DMM § S010.2.14m.

Under postal regulations, initial adjudication of most indemnity claims is conducted by the St. Louis Accounting Service Center. <u>See</u> DMM § S010.4.1. A customer may appeal the denial of an indemnity claim by filing a written appeal to the Manager, Claims Appeals at St. Louis ASC, within three months of the date of the original decision. <u>See</u> DMM § S010.4.2. If the Manager affirms the denial of the indemnity claim, the claimant may submit an appeal to the Office of the Consumer Advocate at U.S. Postal Service Headquarters, which issues the final agency decision. <u>See</u> DMM S010.4.3.

## STATEMENT OF FACTS

In her Complaint, originally filed in Massachusetts Small Claims Court and removed by the government to this Court, plaintiff alleges that she mailed a computer via the United States Postal Service. She maintains that the computer was damaged in transit. She seeks $2,000 in damages.

Plaintiff submitted a claim for recovery with the Postal Service for $1,000. The Postal Service determined that the value of the computer was much less than $1,000 and issued a check to plaintiff for $116.75. To date, plaintiff has neither cashed the check nor exercised her rights of appeal. See Declaration of Willie B. Mixon, attached hereto as Exhibit B.

## ARGUMENT

### I. PLAINTIFF HAS FAILED TO EFFECT PROPER SERVICE OF HER COMPLAINT UPON THE UNITED STATES AND THE UNITED STATES POSTAL SERVICE.

To effect service upon the United States, the United States Postal Service, or an official of the United States Postal Service under Federal Rule of Civil Procedure 4(i), a plaintiff must serve the United States by:

> delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States attorney in a writing filed with the clerk of the court or by sending a copy of the summons and of the complaint by registered or certified mail addressed to the civil process clerk at the office of the United States attorney and . . . by also sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States . . . .

Fed. R. Civ. P. 4(i)(1). As of the date of this pleading, the United States Attorney and the Attorney General have not been served with plaintiff's Complaint in accordance with Rule 4(i). Accordingly, defendant hereby moves for dismissal of the plaintiff's complaint under Rule 12(b)(5). See Flory v. U.S., 79 F.3d 24 (5th Cir. 1996) (failure to serve the Attorney General's Office resulted in a F.R.C. 12(b)(5) dismissal).

4

II. **PLAINTIFF'S TORT CLAIM IS BARRED BY SOVEREIGN IMMUNITY.**

   A. **Plaintiff Has Failed To Exhaust Available Administrative Remedies Pursuant To the Federal Tort Claims Act.**

The Federal Tort Claims Act ("FTCA") is a limited waiver of sovereign immunity, so its provisions must be strictly construed. Dynamic Image Tech v. United States, 221 F. 3, 34, 39 (1st Cir. 2000). The two-pronged administrative remedy requirement of section 2675(a) of Title 28, United States Code, is an absolute prerequisite to federal district court jurisdiction. Gonzalez v. United States, 284 F. 3d 281, 287-88 (1st Cir. 2002)(compliance with this statutory requirement is a jurisdictional prerequisite to suit.)   That section provides, in pertinent part, that:

> An action <u>shall</u> <u>not</u> be instituted upon a claim against the United States for money damages for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant [1] <u>shall have first presented the claim to the appropriate federal agency</u> and [2] his claim shall have been finally denied by the agency in writing . . . .

28 U.S.C. § 2675(a) (emphasis supplied); see also Odin v. United States, 656 F.2d 798, 802 (D.C. Cir. 1981).  The purposes of this component of the FTCA are to ease court congestion and obviate the need for unnecessary litigation, while making it possible for the federal government to expedite the fair settlement of tort claims made against it and providing for the fair and equitable treatment of private citizens involved in litigation with their government. Adams v. United States, 615 F.2d 284, 288 (5th Cir. 1980) (citations omitted).  The requirement of section 2675 is also helpful in bringing "to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant." Rise v. United States, 630 F.2d 1068, 1071 (5th Cir. 1980).

Although plaintiff has made use of the indemnity claims procedure, plaintiff has not exhausted her administrative tort claims remedies. See Declaration of Diane M. Williams, attached hereto at Exhibit C.  These administrative remedies do not overlap, since procedures for adjudication of tort claims are separate and distinct from those for indemnity claims. Compare

5

DMM § S010 with 39 C.F.R. Part 912. Adjudication of indemnity claims is performed pursuant to the Postal Service's authority under Title 39 to adopt rules and regulations and provide mail services to the general public. See 39 U.S.C. §§ 401, 403, 404.[5] The Postal Service's adjudication of administrative tort claims, on the other hand, is performed pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680 and 39 U.S.C. § 409(c), which makes the FTCA applicable to tort claims arising out of activities of the Postal Service. See also 39 C.F.R. § 912.2(a) (authority section). The separation of these functions is deliberate and necessary, for separate offices within the Postal Service are generally responsible for adjudicating indemnity and tort claims and different laws apply to each. Specifically, Postal Service regulations in the DMM govern indemnity claims, whereas state tort law generally governs administrative tort claims. See 28 U.S.C. § 1346(b).

To date, plaintiff has only made use of the indemnity claims adjudication process in the DMM. Plaintiff has not alleged exhaustion of administrative tort remedies pursuant to 39 C.F.R. Part 912. Therefore, in the absence of exhaustion of available tort claims administrative remedies, plaintiff's claim for damages against the government under the FTCA cannot be maintained. Eveland v. Director of Central Intelligence, 843 F. 2d 46, 50 (1st Cir. 1988) (failure to follow the claims procedure deprives the Court of jurisdiction over tort claims against the United States).

---

[5] The list of authorities for the Domestic Mail Manual includes: 5 U.S.C. § 552(a); 39 U.S.C. §§ 101, 401, 403, 404, 3001-3011, 3201-3219, 3403-3406, 3621, 3626, 5001. See 39 C.F.R. Part 111 (authority section).

### B. Plaintiff's Claim, To the Extent It Sounds In Tort, Is a Claim For the Negligent Transmission of Mail, and Thereby Falls Outside the Waiver of Sovereign Immunity Embodied In the FTCA.

It is beyond contravention that the United States, as sovereign, is "immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Lehman v. Nakshian, 453 U.S. 156, 160 (1981) (quoting United States v. Testan, 424 U.S. 392, 399 (1976)). The United States Supreme Court has consistently held that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Lehman, 453 U.S. at 161 (quoting Soriano v. United States, 352 U.S. 270, 276 (1957)).

By enacting the FTCA, 28 U.S.C. §§ 1346(b), 2671-2680, Congress provided a waiver of sovereign immunity in certain cases; however, Congress specifically retained sovereign immunity with respect to "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b); Allied Coin Investment, Inc. v. United States Postal Service, 673 F. Supp. 982, 984 (D. Minn. 1987).[6]

Plaintiff seeks recovery for damage to the contents of an insured mailpiece. Plaintiff's claim, to the extent it sounds in tort, falls squarely within the exception to the waiver of sovereign immunity embodied in the FTCA for claims relating to the loss, misdelivery, or negligent transmission of mail matter. See 28 U.S.C. § 2680(b). As such, plaintiff's claim is precisely the type of action that Congress sought to bar, and must therefore be dismissed. See

---

[6] The operation of the exception to the waiver of sovereign immunity embodied in 28 U.S.C. § 2680(b) is in no way precluded by the "sue and be sued" clause of 39 U.S.C. § 401(1). The FTCA plainly provides that:

> the authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) . . . .

28 U.S.C. § 2679(a); see Dauric Marine Corp. v. U.S. Postal Service, 238 F. 3d 58, 61-62 (1st Cir. 2001).

Insurance Co. of North America v. United States Postal Service, 524 F. Supp. 349 (W.D. La. 1981), aff'd 675 F.2d 756 (5th Cir. 1982); Sportique Fashions, Inc. v. Sullivan, 597 F.2d 664 (9th Cir. 1979); Allied Coin, 673 F. Supp. at 987.

Courts have long recognized that the liability of the Postal Service for losses related to the mails is defined exclusively by the provisions of applicable postal regulations. Twentier v. United States, 109 F. Supp. 406, 408-09 (Ct. Cl. 1953). In Twentier, the Court of Claims ruled that:

> The United States is liable to the owners of lost or damaged mail only to the extent to which it has consented to be liable, and the extent of its liability is defined by the Postal Laws and Regulations. Public policy requires that the mails shall be carried subject to these regulations, . . . and the liability of the Government in case of loss or damage is fixed by these regulations.

Twentier, 109 F. Supp. at 408-09 (citations omitted); see also Marine Insurance Co. v. United States, 410 F.2d 764, 765-66 (Ct. Cl. 1969). Because the terms of postal insurance are published as regulations of the Postal Service, traditional contract doctrines do not apply to postal insurance coverage. Ridgway Hatcheries, Inc. v. United States, 278 F. Supp. 441, 443 (N.D. Ohio 1968). In Ridgway Hatcheries, the plaintiff sought recovery against the Postal Service for losses sustained as a result of the death of goslings shipped via insured mail. The plaintiff argued that the terms of postal insurance should be construed in favor of the plaintiff pursuant to the rule of construction that the terms of a contract will be construed most strongly against the drafter. The court, however, held that the rule was inapplicable to government postal insurance. The court reasoned:

> [t]he postal insurance regulations are promulgated pursuant to statutory authority, and therefore have the force and effect of law . . . . The reason for the rule does not exist in cases involving standard policies the terms of which are fixed by law.

Ridgway Hatcheries, 278 F. Supp. at 443 (citations and footnotes omitted). More recently, contract claims were rejected in Allied Coin Investment, 673 F. Supp. at 982. In Allied Coin, the plaintiff sent rare coins by Express Mail from Michigan to Minnesota. The coins never arrived. Plaintiff framed its complaint in theories of contract and

8

negligence, and characterized the Postal Service as a common carrier, a commercial bailee, and a party to an express contract. The court rejected these alternative grounds and granted the Postal Service's motion for summary judgment. The court observed that, "[w]hile the characterization of the USPS as a common carrier, or a commercial bailee, or a party to an express contract is artful--the ultimate claim of liability remains misdelivery." Id. at 986. Thus, traditional contract principles do not apply here. Rather, plaintiff must look to postal regulations for a basis for recovery.

### III.   THE POSTAL SERVICE PROPERLY ADJUDICATED PLAINTIFF'S CLAIM.

The St. Louis Accounting Service Center properly adjudicated the plaintiff's claim under postal regulations. As required under the Postal Service Regulations, Plaintiff was to provide adequate evidence of value. The Postal Service found the value of the computer to be far less than the $1,000 claimed and issued plaintiff a check for $116.75, which plaintiff has not yet cashed. Plaintiff has not appealed this indemnity decision and now claims damage in the amount of $2,000. See Mixon Decl., ¶ 3. Accordingly, her Complaint should be dismissed.

## CONCLUSION

Based upon the foregoing, defendant respectfully requests that this action be dismissed with prejudice, or, in the alternative, that the Court grant the Defendant's Motion for Summary Judgment.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Eugenia M. Carris
Eugenia M. Carris
Assistant U.S. Attorney
John J. Moakley Federal Court
1 Courthouse Way, Suite 9200
Boston, MA  02210
(617)748-3100

Dated: February 27, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2004, I caused a true copy of the above document to be sent by first-class mail to plaintiff, Cynthia E. Dempster, 34 Rock Neck Ave, Gloucester, MA 01930.

/s/ Eugenia M. Carris
Eugenia M. Carris

10